## ABRAHAM CARROLL *vs.* INTERCOLONIAL CLUB OF BOSTON.

Suffolk.     November 13, 1922. — January 5, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Landlord and Tenant*, Repair, Liability of landlord to third party.  *Agency,* Existence of relation.

In an action of tort against the owner of a building for personal injuries received by a member of a fraternal organization, which was a tenant of a hall therein, there was evidence warranting a finding of the following facts: It was necessary that the lodge have a suitable place for keeping a certain box or casket, six feet long and two feet wide, the contents of which weighed about ten pounds, and, in the negotiations preliminary to the letting to the lodge, an opening in the floor was shown to its representative, which the defendant's superintendent stated was "especially constructed for that purpose" and was "safe." The defendant's superintendent in his behalf agreed that the defendant would do all the repairs and keep and maintain the premises in a safe condition.  When the lodge moved in, it was found that the box was an inch too high for the opening, and another one of the lodge members, with the permission of the defendant's superintendent and with tools borrowed from him, sawed off some pieces of cross timber at the bottom of the opening.  When the plaintiff later was assisting another member in placing the box in the opening, he himself got into the opening, fell through plaster board at its bottom into the room below and was injured.  *Held,* that

(1) The defendant's undertaking went no further than an agreement to repair on notice from the tenant, or, possibly, if a defect came under his own observation;

(2) The obligation assumed by the defendant was at most to maintain the leased premises in reasonably safe condition for the purposes for which they were let;

(3) The opening in the floor was unquestionably safe, even with the cross timbers removed, for the purpose for which it was let, namely, the containing of a wooden box, which would occupy the entire space and the contents of which weighed about ten pounds;

(4) There was no evidence warranting a finding that the defendant was chargeable for the acts of the member who sawed off the cross timbers as for an act of his servant while acting within the scope of his authority;

(5) There was no evidence warranting a finding of a failure of duty on the part of the defendant toward the plaintiff.

TORT for personal injuries received when the plaintiff, a member of Liberty Lodge, No. 126, Knights of Pythias, by reason of an alleged defective condition in the flooring of an opening in the floor of a lodge room in a building owned by the defendant and let

to the lodge, fell through the plastering into a room below. Writ dated June 25, 1918.

In the Superior Court, the action was tried before *White*, J.

There was evidence tending to show that, when the superintendent of the defendant's building showed the opening in the floor for the keeping of a casket to the lodge's representative, as stated in the opinion, he said, in answer to the question, whether it was "strong enough . . . safe," that "it was built for that purpose, especially constructed for that purpose, it certainly is."

The plaintiff asked of an expert carpenter and builder "How much would it cost to have made that place safe for a man to step upon it?" and "how much would it cost to fix a place where the strapping had been removed and make it solid enough to support a man?" the plaintiff offering to show "that it would cost a trivial amount not over three or four dollars to make this place and this bottom perfectly safe for a man to step upon it, and that in either event where the strapping was still in place and where it was removed that it wouldn't cost any more than two or three dollars to make it substantial and safe for a man to step upon it; and I also propose to show what would be necessary to do that; namely, put in one or two boards, or a few boards and nail them on the joists." The evidence was excluded, subject to exceptions by the plaintiff.

Other material evidence is described in the opinion. At the close of the evidence, the judge ordered a verdict for the defendant and reserved the case for a report to this court. After the resignation and death of *White*, J., the case was reported by *Sisk*, J., the report stating that it was reported "upon this stipulation, namely, that if such ruling and direction, solely in so far as the defendant's negligence, whether gross or simple negligence, is concerned, was right, then judgment is to be entered for the defendant on the verdict. But if this sole question of the defendant's negligence whether simple or gross ought to have been submitted to the jury upon either the evidence actually admitted or upon that admitted and that offered and wrongfully excluded subject to the plaintiff's exception then final judgment is to be entered for the plaintiff in the sum of $750 with costs. The ruling on the question of negligence is the only question to be open upon this report. No question of the plaintiff's contributory negligence, assumption of

risk, or other conduct is to be open. No question of agency is to be open to the defendant, nor that the defendant may have been a charitable corporation."

*H. Silverman*, (*J. M. Russell* with him,) for the plaintiff.

*H. S. Avery*, for the defendant.

DE COURCY, J. On the evidence submitted by the plaintiff, the following facts could be found. During the negotiations for engaging a hall, between Silverman, an officer of Liberty Lodge, No. 126, Knights of Pythias, and one Kickham, the janitor or superintendent of the defendant's building, there was a discussion as to a suitable place for keeping a certain box or casket, six feet long and two feet wide, the contents of which weighed about ten pounds. After some other places had been considered and rejected as unsuitable, the superintendent took Silverman into a room known as Brunswick Hall, removed a trap door or cover, and showed him an opening in the floor, substantially the length and width of said casket, and apparently the same depth. This hall was later engaged by the lodge for its meetings. When the paraphernalia was moved in, Isaac Golden, who had charge thereof, found that the hole was not deep enough by about an inch to contain the casket and have the trap door put back on a level with the rest of the floor. Across the bottom of the hole there were five or six pieces of timber, referred to in the evidence variously as "beams," "boards," "slats" and "straps." Golden borrowed from the superintendent a saw, chisel and hammer; he cut off and removed these cross pieces, placed the casket in the hole, and put the trap door in place. This work was done in the absence of the superintendent; but on Golden's testimony, it could be found that Kickham permitted it. The casket was placed in the hole, and was not again moved until the night of the meeting. Then the plaintiff, who was a member of the lodge, was assisting in replacing it when in some unexplained way he got into the hole, fell through the plaster board at the bottom of the opening and into the room below, and was injured.

At the trial in the Superior Court a verdict was directed for the defendant. The case was reported to this court on a stipulation under which the only issue open is whether there was evidence of negligence or gross negligence on the part of the defendant entitling the plaintiff to go to the jury. He contends that the jury

would be warranted in finding that the defendant assumed the duty of maintaining this opening in the floor in a condition of safety, on its own responsibility, within the doctrine of *Miles* v. *Janvrin*, 196 Mass. 431; *S. C.* 200 Mass. 514. As to such an agreement it was said in *Fiorntino* v. *Mason*, 233 Mass. 451, 454: "It can be supported and proved only by evidence far more explicit than a mere general agreement to maintain in repair. It imposes an obligation on the landlord to enter upon the demised premises at all reasonable times for the purpose of inspection and ascertainment of any defective condition. The landlord thereby assumes direct and initial responsibility for the condition of the premises as to safety at all times." It is difficult to deduce such an agreement from the testimony of the witness Silverman. The alleged promise to "do all the repairs" and "keep and maintain the premises," when considered in connection with the entire conversation, seems to go no further than an agreement "to repair on notice from the tenant, or possibly, if the defect came under his own observation." *Fiorntino* v. *Mason*, 233 Mass. 451, 456.

However broadly we interpret this testimony, the obligation assumed by the defendant was at most to maintain the leased premises in reasonably safe condition for the purposes for which they were let. So far as this opening in the floor was included in the letting, the sole use of it that was contemplated was the containing of a wooden box, which would occupy the entire space, and the contents of which weighed about ten pounds. It was unquestionably safe for that purpose, even after the cross timbers had been removed.

The injury to the plaintiff was due to the act of his fellow member, Golden, in cutting off these cross pieces at the bottom of the opening. This was done after the tenancy had begun; it was not embraced in the contract of letting, and it imposed no legal duty on the defendant. And while the alleged permission given by Kickham may relieve Golden from liability for what he did, the contention that Golden's negligence was chargeable to the defendant, as the act of its servant while acting within the scope of his authority as such, is not supported by the evidence.

An examination of the record discloses no failure of duty on the part of the defendant which would warrant a finding of negligence or gross negligence. As no other issue is raised by the report it is

unnecessary to consider the counts based on alleged warranty and false representations.

We find no error in the exclusion of evidence.

In accordance with the terms of the report, judgment is to be entered for the defendant on the verdict.

*So ordered.*