ZURICH GENERAL ACCIDENT AND LIABILITY INSURANCE COMPANY, LTD., Respondent, v. WATSON ELEVATOR COMPANY, INC., Defendant, and CROSS AND BROWN COMPANY, Appellant.

(Argued March 18, 1930; decided May 6, 1930.)

*Walter L. Glenney* for appellant. As agent of the building, the defendant-appellant could not be held liable for an accident resulting from negligence of the employees in the building. (*Loeb* v. *Hellman*, 83 N. Y. 601; *Slater* v. *Barnes*, 207 App. Div. 413; *Reynolds* v. *Strong*, 103 N. Y. Supp. 106; *MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382; *Schloendorff* v. *New York Hospital*, 211 N. Y. 125.)

*Fred H. Rees* for respondent. Defendant-appellant, being the sole agent and in control and management of the entire building, with the exception of the portion used by the owner, is legally liable for an accident resulting from the negligence of the elevator operator and the superintendent. (*Cattini* v. *American Ry. Express Co.*, 202 App. Div. 336; 234 N. Y. 585; *Charles* v. *Barrett*, 233 N. Y. 127; *Braxton* v. *Mendelson*, 233 N. Y. 122; *Vogemann* v. *American Dock & Trust Co.*, 131 App. Div. 216; *Scioloro* v. *Asch*, 198 N. Y. 77.) The defendant-appellant is directly liable for the negligence of any servant employed by it and working in connection with the management of the premises. (*Mollino* v. *Ogden*, 243 N. Y. 450; *Marsh* v. *Hand*, 120 N. Y. 315; *Heinemann* v. *Heard*, 50 N. Y. 27; *Witney* v. *Martine*, 88 N. Y. 535; *Orcutt* v. *Century*, 201 Mo. 424; *Tippecanoe* v. *Jester*, 180 Ind. 357.)

HUBBS, J. The appellant Cross & Brown Company is a domestic corporation engaged, among other things, in the business of acting as managing agent for owners of buildings and real property. The Rudolph Wurlitzer Company, Inc., was the owner, under a long term lease, of a sixteen-story store and office building on West Forty-second street in the borough of Manhattan, New York city. In June, 1921, the appellant and the owner of the building entered into a contract in writing in which it was agreed that the appellant should act as agent of the

owner for the leasing of space in the building for a commission of one per cent on the gross rental on leases closed by it. It also agreed to take over the management of the building for the sum of $2,500 per year, the consent of the owner to be first obtained before any outlay for alterations or repairs should be contracted for except in case of emergency repairs.

The first four floors of the building were occupied by the owner for store purposes. The appellant entered upon the performance of its duties under the contract. It hired employees to operate the elevators and to perform other work about the building. When employees were hired by appellant they were each required to sign a card which recited that employment was accepted with Rudolph Wurlitzer Company, owner of the building, and that employment might be discontinued by the owner or Cross & Brown Company, its agent, at any time without notice. The appellant paid the employees their wages and each month sent a statement of the exact amount so expended to the owner, which remitted the amount to the appellant. The appellant did not receive any percentage or commission on the wages, or make any charge against the owner for such service, except as it was included in the $2,500 yearly compensation received by it. The owner secured indemnity insurance in its name which covered elevator employees. The appellant discharged employees on occasion and hired others. It hired a man who was classified as superintendent of the building and who had the supervision of the employees and authority to hire and discharge. His wages were paid by the owner in the same way as the wages of the other employees and he signed the same kind of card stating that he was in the employment of the owner.

The appellant had a separate department for operating buildings and had an operating manager who had charge of building superintendents. He was paid by the appellant. The owner had exclusive charge of the first four

floors of the building with which floors the appellant had nothing whatever to do. The appellant considered itself responsible for the proper management of the building outside of the part occupied exclusively by the owner.

On October 22d, 1923, a passenger in an elevator in that part of the building under the management of the appellant met with an injury which caused his death. The plaintiff's version of the accident, which has been accepted by the trial court, was that on the morning of the accident the elevator operator, on entering the elevator, discovered on the floor of the elevator a broken spring which controlled the position of the operating lever, that he called the attention of the superintendent of the building to it and was told by the superintendent to use the elevator as it was, and that the defect caused the accident.

An action was commenced by the personal representative of deceased against the owner to recover damages because of his negligent death. The owner was insured by the plaintiff in this action. It settled the action against the owner, and by agreement was subrogated to the rights of the owner against the appellant.

The question for determination is whether the appellant is liable for the damage suffered by the owner, in being obliged to pay damages to the personal representative of the deceased passenger.

The action is based on an alleged implied contract of indemnity to recover over against the alleged primary wrongdoer. It is alleged that the appellant failed to manage the building properly according to its contract and that thereby the owner suffered damage. The principle of *respondeat superior* is not involved. The negligence which caused the accident was either that of the superintendent of the building or of the operator, or of both.

There could not have been any negligence on the part of the appellant for failing to inspect the elevator for it

was inspected by a representative of an insurance company the Friday before the Monday on which the accident happened, and found to be in proper order. For all that appears the spring might have broken within a few minutes before the operator came in the morning and discovered it. In order to hold the appellant liable it must be held that it is legally responsible for the personal act of the superintendent of the building and the operator, performed without its knowledge.

The principle of law applicable was clearly stated by FIELD, J., in *Barnard* v. *Coffin* (141 Mass. 37, at 41): " The principle which runs through the cases is, that, if an agent employs a sub-agent for his principal, and by his authority, express or implied, then the sub-agent is the agent of the principal, and is directly responsible to the principal for his conduct, and, so far as damage results from the conduct of the sub-agent, the agent is only responsible for a want of due care in selecting the sub-agent; but if the agent, having undertaken to do the business of his principal, employs a servant or agent, on his own account, to assist him in what he has undertaken, such a sub-agent is an agent of the agent, and is responsible to the agent for his conduct, and the agent is responsible to the principal for the manner in which the business has been done, whether by himself or by his servant or agent."

*Stone* v. *Cartwright* (6 T. Rep. 411) is an old English case often cited by the courts of this country. In that case LORD KENYON, Chief Judge, said: " In all these cases I have ever understood that the action must either be brought against the hand committing the injury, or against the owner for whom the act was done: but it was never heard of that a servant who hires labourers for his master was answerable for all their acts."

Many cases illustrating the principle are collated in a note to the case of *Smith* v. *Rutledge* (61 A. L. R. 273, at 277). Applying that principle to the facts of this

case we reach the conclusion that the appellant is not liable to the owner for the personal negligent act of the superintendent of the building or of the operator of the elevator.

If the appellant had contracted to take over the exclusive control and operation of the building as an independent contractor, employing its own servants and paying their wages from its own funds, and receiving its compensation from the owner for such services, including its disbursements, a different situation would be presented. In the case of *Mollino* v. *Ogden & Clarkson Corp.* (243 N. Y. 450), relied upon by the respondent herein, the managing agent had possession of the building and agreed to make necessary repairs. It permitted the building to remain in a dangerous condition after it should have had knowledge of the condition. In brief, it breached its contract to make repairs, and as a result the owner was obliged to pay damages to a third party who had been negligently injured because of such breach. The principle decided in that case is not applicable to this case.

The appellant here was not chargeable with notice of any defect in the elevator. It was not negligent in failing to inspect it. The superintendent and the elevator operator were not its servants. It is not claimed that it was negligent in hiring or retaining incompetent servants. The evidence does not tend to establish that the appellant failed to perform any duty which it owed to the owner of the building.

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgments reversed, etc.