### HARRISON v STRUICH

Ohio Appeals, 7th Dist, Mahoning Co

Decided April 12, 1935

Knight & Gluck, Youngstown, for plaintiff in error.

William E. Pfau, Youngstown, for defendant in error.

## OPINION

By NICHOLS, J.

The courts of Ohio have given much consideration to the question of liability upon the part of a landlord where injuries are received by an invitee of the tenant upon the leased premises. One of the early cases is that of **Burdick v Cheadle, 26 Oh St, 393,** the syllabus of which case is as follows:

"The defendant, being the owner of a lot of ground, erected thereon a store house, and afterward leased the store room and agreed with the lessee to construct therein cornices, shelving and fixtures, in a secure, safe, convenient and proper manner for the sale of dry goods and groceries, and to keep the premises in good order. The fixtures put up under the agreement were unsafe and insecure from the want of sufficient fastening to the walls of the building —all of which was known to the defendant, who, on request of the lessee, refused and neglected to repair. Afterward, and while the room and fixtures were in the possession of the lessee, the shelving fell and injured the plaintiff, who was, at the time, in the store room as a customer of the lessee. Held, the facts stated do not constitute a cause of action against the defendant and in favor of the plaintiff."

In the case of Burdick v Cheadle, above cited, the rules relied on by the plaintiff are stated in the opinion as being the following:

"1. That an owner of real estate where-

on a nuisance exists can not exonerate himself from liability for injuries which may, at any time result therefrom, by parting with the title or possession of the premises.

2. That a lessor who, as between himself and the lessee, is bound to keep the leased premises in good order, is liable for a nuisance which may originate during the continuance of the lease."

In that case it did not definitely appear whether the noxious structures existed at the time the lessees entered into the possession of the store room, but it was clearly stated that the injury complained of was inflicted during the possession of the lessees. The court, in its opinion, say:

"We do not think the defendant's liability can be asserted under either of these rules. * * * whether the nuisance (conceding the structures in question were such) was erected prior to the possession of the lessees, or originated afterwards, the liability of the defendant, Cheadle, existed only in favor of persons standing strictly upon their rights as strangers to the property, and as to whom it was the duty of the defendant to remove or repair the structures. * * * But the plaintiff was not a stranger, standing strictly upon his rights as such. Indeed, the noxious fixtures complained of did not amount to a nuisance at all in the legal sense of the term. They were not erected or maintained in violation of any right of the public, or of any member of the public. They were unsafe, it is true, but did not tend to endanger the person or property of strangers to the premises. They were unsafe to persons and things which might be for the time being in the store room; but no person or thing could rightfully be there, except by the permission and upon the request of the lessees. No one doubts that the plaintiff was rightfully in the room at the time of the injury, but his only right was that of a customer of the tenant. Whatever, therefore, may be the rights of the plaintiff as such customer of the tenant, it is quite clear that he has no remedy against the lessor, as the erector or maintainer of either a public or private nuisance. * * * The general rule of law undoubtedly is, that persons who claim damages on the account that they were invited into a dangerous place, in which they received injuries, must seek their remedy against the person who invited them. There is nothing in the relation of landlord and tenant which changes the rule. There is no implied engagement or promise, on the part of a lessor, that the leased premises are in a safe condition, or that they are fit for the use to which the lessee intends to put them. If they be unsafe or unfit, it is the duty of the tenant to make them safe, or to fit them for the intended use; and the landlord may reasonably expect that the tenant will do so.

Guests or customers of the tenant must seek redress for injuries, caused by defects in the premises, from the tenant and not from the landlord, even though the defects existed when the lease was made; for if they had not entered the premises at the request of the tenant, or under his license, they would not have suffered injury."

Citing Sherman and Redfield on Negligence, §503.

The court, in the case of Burdick v Cheadle, further held, as shown by the syllabus, and as well in the opinion of the court that the fact that Cheadle had agreed with the lessees to construct the fixtures in a manner safe and proper for the sale of dry goods and groceries, and the fact of his failure to perform his contract even when notified of the unsafe condition, and being requested to repair the same, are not elements in the plaintiff's right to recover, even though the owner knew that the room was intended to be used as a place of resort for the customers of the tennat.

The above cited and quoted authority presents a much stronger case than that of the plaintiff in the instant case. The case of Burdick v Cheadle, supra, is cited and quoted with authority throughout a long line of cases in Ohio, including the following:

Shindlebeck v Moon, 32 Oh St, 264;
Stackhouse v Close, 83 Oh St, 329;
Davies, a Minor, v Kelley, 112 Oh St, 122;
Berkowitz v Winston, 128 Oh St, 611.

The syllabus in the last cited case is as follows:

"Promise by the lessor, to make repairs of premises leased, does not impose upon the lessor liability in tort to persons entering thereon at the invitation of the lessee."

In the case of Shindelbeck v Moon, supra, where the questions relating to the liability of landlord and tenant, lessor and lessee, to a third person who has been injured in consequence of some defect in condition of the premises was under consideration. The court say:

"The liabilities arising from the relation of landlord and tenant are these: Liability

generally accompanies occupation, and when a landlord leases and parts with the possession, his liabilities are in certain instances devolved upon the tenant.

The principle which runs through cases determining the responsibility of the one or the other, may be thus defined: Whoever had control of the premises at the time the cause of injury originated, that person is liable in damages, which simply means that the party in fault must respond.

Hence it is that where, at the time of the lease, the property is in a ruinous or defective condition, and by reason thereof the injury happens, then the owner or lessee is liable generally, though there are cases which make this liability dependent upon the covenants of the lease. * * * And when there has been a nuisance of continued existence, lessor and lessee may both be liable for damages resulting therefrom. The lessee in actual possession of the premises, if he continues the nuisance after notice of its existence, and notice to abate it; the lessor, if he at first created it and demised the premises with the nuisance upon them, and at the time of the damage done is receiving a benefit therefrom by way of rents or otherwise."

The court, in the case of Shindlebeck v Moon, supra, cited many authorities to the effect that under certain circumstances where the nuisance existed when the property was leased to the tenant the landlord may be held liable, and in the opinion the court clearly distinguishes and holds that in cases where the person injured was on the premises upon the invitation of the tenant, or as a customer, and was not a stranger maintaining his rights as one of the public, the injured invitee must seek his remedy against the party inviting him, and the court cites with approval the case of **Burdick v Cheadle, 26 Oh St, 393.** To the same effect is the case of Cullings v Goetz, 256 N. Y., 287.

In **Shinkle, Wilson & Kries Co. v Birney & Seymour, 68 Oh St, 328,** the court say, on page 334 of the opinion:

"A lessor of buildings in the absence of fraud or any agreement to the effect, is not liable to the lessee or others lawfully upon the premises for their condition or that they are tenantable and may be safely and conveniently used for the purpose for which they are apparently intended. This statement of the rule has been frequently quoted and approved. Its absolute determination of the rules of the lessor and lessee were never denied until recently."

The syllabus in the above quoted case of **Stackhouse v Close, 83 Oh St, 339,** is as follows:

"A lessor of a building out of possession and control is not liable to the tenant **or any person rightfully on the premises** for their condition in the absence of deceit or of any agreement or liability created by statute."

The syllabus in the case of **Marqua v Martin, 109 Oh St, 56,** reads:

"The owner of a building out of possession and control is not liable to persons upon the premises by invitation of the lessee thereof, for injuries resulting from the physical condition of such premises unless such liability is imposed by contract or statute."

Again, the syllabus in the case of **Goodal v Deters, 121 Oh St, 432,** is as follows:

"The owner of real property may lease the same in whatever condition it exists at the time of the lease. If the owner does not agree with the lessee to put the property in good repair or keep it in good repair, the lessee can not recover from the owner damages for an injury sustained by the lessee due to defective condition of the property."

The guest or invitee of the lessee stands in the same situation as the lessee and by the great weight of authority can not recover damages from the lessor who is out of possession and control where there is no claim of fraud or deceit or any liability imposed by statute.

The judgment of the Common Pleas Court sustaining the motion of defendant below for a directed verdict is affirmed.

Judgment affirmed.

CARTER and ROBERTS, JJ, concur.